PORTERVILLE IRR. CO. v. GOODRICH
et al. (No. 874.)

(Court of Civil Appeals of Texas. El Paso.
March 14, 1918. Rehearing Denied
April 11, 1918.)

WATERS AND WATER COURSES ☞232—IRRI-
GATION COMPANY—CONTRACTS.

An agreement between an irrigation company and landowners contemplated organization in an unorganized county of an irrigation district to buy its plant and water appropriations. The landowners were to take over the plant for the season of 1917, and in the meantime use their best efforts to organize the district as soon as possible, and they were to surrender the plant at the end of the season or at termination of any period for which the agreement was extended. It was also expressly provided that the season of 1917, for the purpose of the agreement, should end December 1, 1917, unless terminated sooner by organization of the district and acquirement of the property, but in case of inability to organize time was extended to December 31, 1919. In a proceeding to enjoin the company from interference with operation of the plant it appeared from the evidence that doubt as to the lawful organization of the district led to the enactment of Acts 35th Leg. c. 88, § 117 (Vernon's Ann. Civ. St. Supp. 1918, art. 5011½l), enacted March 19, 1917, including unorganized counties in the act for the establishment of water improvement districts, that the landowners were legally advised of the law and of the validity of organization thereunder and steps to be taken. It did not appear, however, that they proceeded to organize a district contemplated in the agreement. Held, that the agreement expired December 1, 1917, and was to be continued only in case the laws were inadequate to permit organization; and that if there was any doubt as to adequacy of the law it was removed by section 117 of the statute referred to, and that as no steps were taken to remove any other doubt suggested in the petition or to organize the district and purchase the plant, a temporary injunction should not have been granted and should be dissolved.

Appeal from District Court, Reeves County; Chas. Gibbs, Judge.

Injunction by Floyd Goodrich and others against the Porterville Irrigation Company. From an order granting application for a temporary writ, defendant appeals. Temporary injunction dissolved.

Jno. B. Howard & Clay Cooke, of Pecos, for appellant. W. A. Hudson and J. F. Ross, both of Pecos, for appellees.

WALTHALL, J. This is an appeal from an interlocutory order of the district judge made in vacation granting an application for a temporary writ of injunction.

Appellant is a private irrigation corporation created under subdivision 23 of article 1120, Revised Statutes of this state, and formed to operate as such under chapter 3, title 73, pertaining to irrigation. Its place of business is at Portersville, in the unorganized county of Loving.

On the 15th day of February, 1917, appellant entered into an agreement with Floyd Goodrich and others, the memorandum of agreement reciting, among other things, not necessary to state more fully here, that appellees were resident, taxpaying, water-using landowners of Loving county, and contemplated that an irrigation district should be organized in and about Portersville, in Loving county, for the purpose of buying the irrigation plant and water appropriations then owned and operated by the appellant company, and that it was mutually desired by both parties thereto that pending the organization of such district a working basis for the installation of such pumping machinery and repair of the company's ditches and the operation of the same be adopted.

It was therefore agreed, among other things, that the said landowners would use their best efforts to procure the organization of an irrigation district at the earliest date possible under the laws then existing or thereafter enacted, that upon the organization of such district, negotiations should be entered into between such district and the company looking to the purchase of the company's plant and water appropriations.

It was agreed that for the irrigation season of 1917 the company should co-operate with a committee of the landowners and water users provided for in the agreement to act with reference to the installation, repair and operation of the irrigation plant and system, and employ such manager for said season for the company mutually satisfactory to both parties. The agreement provides for the selection of a committee of five from the resident landowners and water users, and in several paragraphs states the duties, authority, and rights of the committee in the co-operation with the company in the management of said irrigation plant and system.

The manager, selected by the terms of the agreement, was to be considered and deemed in all respects the agent of the company, and nothing in the agreement should be construed as altering the possession or control of the property of the company. The landowners agreed that the plant should be surrendered to the company at the end of the season of 1917, or at the termination of any period for which the agreement may be extended.

Paragraph 11 of the agreement, we think, states the period of time through which the agreement should continue and be in force. It reads as follows:

"Eleventh. This agreement shall remain in full force and effect for the irrigation season of 1917, which, for the purposes of this agreement, shall end on the 1st day of December, 1917, and the existence of said committee shall terminate when this agreement ends, provided however, that this agreement shall terminate sooner than said date upon the organization of such irrigation district and the acquirement of said property; and in the event of inability to organize such district by reason of inadequate laws therefor, this agreement shall continue until December 31, 1919, at the option of the landowners, they keeping said plant in a reasonable state of repair and replacing machinery lost or destroyed by flood or otherwise. Notice of election to con-

tinue or discontinue this contract shall be given to the company in writing not later than November 15, 1917."

The company agreed, through its president, to sell its plant and water appropriations, rights, and franchises to the district so organized at a price to be mutually agreed upon by the parties, or at a price to be fixed by arbitration in the event the parties could not agree upon the price. The company was to accept in payment of its properties the bonds of said irrigation district duly and legally issued; "provided, however, that this option shall in no event, unless extended by the company, continue for a longer period than the term ending December 31, 1919."

The petition filed January 22, 1918, is based upon the agreement, reciting many of its provisions; alleges that the committee provided for in the agreement operated said irrigation system during the irrigation season of 1917 and performed all of their duties under the agreement; alleges that the irrigation district contemplated by the agreement had not been organized, because "the counsel then representing defendant company advised these plaintiffs and the officers and directors of defendant company that such organization would be of doubtful validity, and the bonds contemplated to be issued by said district would be unmarketable and without value, because there was no provision of law authorizing the comptroller to collect special taxes for an irrigation district from nonresident landowners in an unorganized county."

The petition further recites that the company was fully advised of the difficulties presented to the organization of said district and acquiesced therein; that it was mutually agreed by all parties concerned to postpone the organization of said district until some future date within the life of the agreement as extended; that plaintiffs and other landowners under said system are now and have at all times been willing to proceed with the organization of said district as provided in the agreement, and have been prevented from so doing only by reason of the facts as stated; that steps were then being taken to organize the district; and that the notice provided for to continue said agreement in force until December 31, 1919, had been given.

It is alleged that the company acting through its president, on the 1st day of December, 1917, by certain acts alleged, assumed control of said irrigation system in violation of said agreement. The petition alleges that the company by reason of the facts shown is not able to operate the plant or respond in damages for not doing so; that plaintiffs are resident water users under the system, are farmers and dependent upon the products of their farms for support; that the company, with knowledge of all the facts, entered into said agreement; that the company refuses to permit plaintiffs, as such committee, to take charge of and operate said plant. Plaintiffs pray that defendant be enjoined from interfering with them in the operation of the plant and the enforcement of said agreement until December 31, 1919, or the organization of said district, and the acquisition of the properties of defendant as contemplated in the agreement.

Appellant company answered by general and special exceptions, general denial, and special denials; the answer goes into much detail in its allegations that plaintiffs have not, in any manner, complied with the terms of the agreement, or co-operated with the company in the adoption and enforcement of proper rules and regulations for the management of the plant and the distribution of water, the committee claiming and assuming absolute power to manage and distribute water; that plaintiffs and the landowners have not paid their water rentals for 1917; have not kept the company free from debts as agreed, or the plant in a good state of repair; that plaintiffs did not attempt to perform any of the terms of the agreement; did not attempt to organize, or take any steps to organize, an irrigation district for the operation of said plant, nor agree, nor attempt to agree, on a reasonable price to be paid for the system, but refused to perform any part of said agreement, and conspired and colluded together to defraud the company out of its irrigation system; solicited the bringing of suits against the company; alleged its ability and willingness to operate the system.

The court heard evidence, and made an order, restraining the company from interfering with plaintiffs in the operation of the irrigation system under certain conditions. Space will not permit us to detail the evidence introduced on the hearing. It appears from the evidence that some doubt had been expressed in the early part of 1917 by Attorney W. W. Hubbard as to the adequacy or sufficiency of the law in its application to the formation of an irrigation district in an unorganized county, resulting in the insertion through the suggestion of Mr. Hubbard, of section 117 in chapter 88, General Laws 35th Leg. (Vernon's Ann. Civ. St. Supp. 1918, art. 5011½l), including unorganized counties in the act empowering commissioners' courts to establish water improvement districts in their respective counties, as provided in the act. That act became a law March 19, 1917.

In addition to the above, Mr. Hubbard testified that the insertion of said section into the law was by him deemed sufficient to remove any doubts as to the applicability of said law to the organization of such improvement district in an unorganized county; that he so advised plaintiffs at whose request and expense he had gone to Austin at the time of the session of the Legislature; that he had, while at Austin, discussed the matter with the Attorney General of the state, and was

advised by that officer that in his opinion the organization of said district would be legal, and the issuance of bonds by such district would be approved by the Attorney General, and that he had so advised plaintiffs.

The evidence further shows that plaintiffs were advised by Attorney Hubbard as to the first necessary step to be taken in the organization of said district, but the evidence does not show that plaintiffs have taken any steps whatever to perfect the organization of a water improvement district as contemplated in the agreement.

Appellant presents a number of propositions as to why the injunction should not be issued, restraining the company from resuming sole control and management of its irrigation plant. It occurs to us that the agreement between the parties, and sued upon in this proceeding, expired December 1, 1917. It is quite clear that the agreement was to be continued beyond that time only in case the laws were inadequate to permit the organization of such irrigation district as the parties had in contemplation during the year 1917.

The evidence, to our mind, conclusively shows that, if there was doubt as to the adequacy of the law in its application to the unorganized county of Loving, doubt was removed by the insertion of the section above referred to, of which plaintiffs were fully advised. The law went into effect in March of 1917, and the evidence is clear that plaintiffs have taken no steps whatever to remove any other doubt that might exist as suggested in the petition, or to comply with their agreement in the organization of the district and the purchase of the company's irrigation plant.

Appellant's answer, and the evidence, in our opinion, clearly met the issues tendered in the petition. There was nothing remaining upon which to base an order for a temporary injunction.

It is unnecessary for us to discuss the other grounds presented by appellant.

The temporary injunction should not have been granted, and is hereby dissolved.